# Frank Pokorney, Appellee, v. Binner-Wells Company, Appellant.

## Gen. No. 18,023.

1. MASTER AND SERVANT—*when no continuous undertaking shown.* Where a watchman employed by defendant company informs defendant's superintendent, as his duty requires, that cans of benzine were left in a building contrary to the rules, and such superintendent replies, "All right; I will take care of it," a continuous undertaking on the part of defendant to see that no benzine should ever be kept inside the building is not established.

2. EVIDENCE—*when not competent for person to construe language used by him.* In an action for personal injuries caused by an explosion of benzine, it is not competent for a superintendent of defendant company to attempt to construe his language used when he told plaintiff, a watchman, that he "would take care of it" when told that benzine was left in a building contrary to rules, when there is no other evidence to the same effect and such construction is contrary to his evidence and that of plaintiff as to what was in fact said.

3. MASTER AND SERVANT—*instruction as to whether promise made for plaintiff's safety or security of property.* Where action is brought for injuries caused by an explosion of benzine, and the evidence shows that defendant's superintendent told plaintiff, a watchman that he "would take care of it" when plaintiff reported that benzine was left in a building contrary to rules, it is error to refuse an instruction that if plaintiff's report had reference to the protection of defendant's property and not to his security, then the report or promise in connection therewith cannot support a recovery, where the distinction referred to therein is not made clear in other instructions.

4. MASTER AND SERVANT—*instruction directing verdict.* An instruction that if from the evidence and under the instructions the jury believe that plaintiff has established the allegations in a certain count, defendant should be found guilty, is erroneous where plaintiff, a watchman for defendant, was injured by an explosion of benzine, and the declaration does not aver that plaintiff, who reported its presence in the premises, complained that it was dangerous to him or that defendant's alleged promise to keep it outside was made because of any alleged fear of personal danger, or that plaintiff was thereby induced to remain, and an instruction is refused which points out the distinction between a complaint made for plaintiff's safety and one made for the security of defendant's property.

Pokorney v. Binner-Wells Company, 178 Ill. App. 546.

Appeal from the Superior Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed April 3, 1913.

F. J. CANTY and P. L. McARDLE, for appellant; J. C. M. CLOW, of counsel.

FRANCIS X. BUSCH, FRANK A. ROCKHOLD and EDWARD E. SHINNICK, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Plaintiff recovered a judgment for $800 damages for injuries sustained while endeavoring to put out a fire in defendant's premises. Defendant is in the printing business, and used benzine to clean its presses. The benzine came in five-gallon cans, which were ordinarily kept out-doors upon a shelf or platform constructed for that purpose outside of one of the windows of the press-room. Plaintiff was employed by defendant as a night watchman. His duties required him to visit each floor of the building hourly during the night, "see that everything was all right" and "pull the box" or time-clock on each floor. He had been doing this work for four years and during that time he had put out three small fires in the building. About three weeks before the accident, he told the superintendent that some of the cans of benzine had been left "inside the window." The superintendent said "All right; I will take care of it." The plaintiff testified that after this conversation he did not see any cans inside the room until just before the accident, which happened at ten o'clock at night. At that time, in making his rounds, he smelled smoke, and going into the press-room, found a fire in a box in the corner. Near the box was an empty—or nearly empty—benzine can. He pushed the can aside and as he did so, it "blew up" with a "flurr" (as the plaintiff expressed it) setting fire to his clothing and burning him severely.

The case went to the jury upon a single count of the declaration, which averred that the defendant "in and about its business had and used certain cans of a highly explosive substance, to-wit: benzine," and knew, or should have known, that the presence of said cans of benzine in the premises was dangerous on account of the fact that defendant also had "rags, waste papers and other highly inflammable substances" in the premises; that prior to October 14, 1908, plaintiff complained of the presence of said benzine in the premises and of the danger thereof, and that defendant then and there "promised and undertook with the plaintiff not to keep said benzine in said premises, but to keep the same on the window-sills outside of said premises and away from the said combustible material;" that defendant disregarded its promises and negligently allowed said cans of benzine, on the day aforesaid, "to remain within the said building near to combustible material," which combustible material "took fire," and that the plaintiff, not knowing the benzine was inside the building, and relying upon, and misled by, the promise of defendant "to keep said benzine out of the premises," attempted to put out the fire and was burned by an explosion of the benzine, without any fault on his part.

It is contended by appellee's counsel that the conversation above related between the plaintiff and the superintendent is sufficient to establish "a continuous undertaking" on defendant's part to "keep the benzine out of the premises"—that is, to *see to it that no benzine should ever be kept inside the building,* which, it is claimed, is the legal effect of the "complaint and promise" set up in the declaration. We are unable to agree with this view of the evidence. A "continuous undertaking" of that sort would amount to a contract of insurance. If it be conceded that the superintendent had the implied authority to make a contract of that nature with the plaintiff, still it was incumbent on the plaintiff to show that such was the understanding

and intention of the superintendent, when he said to the plaintiff: "All right; I will take care of it." There is nothing in these words alone, or in the circumstances under which they were uttered, tending to show that he intended thereby to agree to do anything more than to attend to the immediate cause of complaint. As above stated, there was a shelf outside for these cans of benzine, and one of the witnesses testified that "it was against the rules to have benzine cans on the inside or away from where the benzine belongs." It was the duty of the plaintiff to report any violation of defendant's rules in that respect, and the only reasonable conclusion to be drawn from the superintendent's statement, under such circumstances, is that he agreed "to take care of" the reported violation, by having the cans removed to the shelf where they belonged. The trial court permitted the superintendent to testify, over defendant's objection and exception, that when he said that he "would take care of it," he meant that he "would speak to the foreman of the floor and see that it would not be done again." There was no other evidence to that effect, and it was not competent for the superintendent thus to attempt to construe his own language, and give it a meaning contrary to the evidence of both himself and the plaintiff as to what was in fact said.

The defendant requested an instruction to the effect that if the jury believed from the evidence that the report made by the plaintiff to the superintendent had reference to the protection of the defendant's property and not to the security of the plaintiff, "then such report, or any promise made in connection therewith, if any, cannot support a recovery against the defendant." This the court refused, and this action of the court is assigned as error. Appellee's counsel do not deny that this instruction states a correct proposition of law, applicable to one theory of the facts in this case, but claim that, in substance, it was covered by other instructions. It is true that by other in-

structions the jury were told what were the necessary elements of proof in order to recover under the allegations of the declaration, but the declaration does not allege that the promise was made with reference to the safety of the plaintiff, and in none of the other instructions is the distinction referred to in the refused instruction made clear. We think defendant was entitled to have the distinction in this respect clearly pointed out, and that it was error for the court to refuse the offered instruction.

The error in refusing this instruction was increased by the giving of the fourth instruction, given on behalf of plaintiff. In part, that instruction said to the jury: "If you believe from the evidence, under the instructions of the court, that the plaintiff has established the allegations in the first additional count of his declaration by a preponderance of all the evidence, you should find the defendant guilty." It has several times been held that this instruction should not be given in any case involving the question of assumed risk, unless the declaration contains an averment that the plaintiff did not assume the risk, or sets up facts equivalent to such an averment. The declaration does not aver that the plaintiff complained that the presence of benzine inside the premises was dangerous to him, or that defendant, in making the alleged promise to keep the benzine outside, did so because of any alleged fear of the plaintiff that he was in any personal danger therefrom, or that plaintiff was thereby induced to remain at work. In Krieger v. Aurora, E. & C. R. Co., 242 Ill. 544, after reviewing a number of cases in which a similar instruction was held erroneous, or was criticised, the court said (p. 551): "It will be seen from the decisions referred to that if it is proper to give the instruction at all, it can only be justified where the declaration is a complete statement of a cause of action. As the instruction directed a verdict for the plaintiff if he had proved the facts alleged in his declaration, it could not be cured by other

instructions." It was essential to a recovery in this case that plaintiff should show, by a preponderance of evidence, that the alleged complaint and promise had reference to his personal safety, as distinguished from a complaint of danger to property from fire, and a promise to lessen that danger; and though the fourth instruction was prefaced by the clause "if you believe from the evidence, under the instructions of the court," yet, as above shown, the only offered instruction, which clearly pointed out this distinction, was refused.

For the errors indicated, the judgment of the Superior Court will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*